**THIS DISPOSITION
IS NOT CITABLE AS PRECEDENT
OF THE T.T.A.B.**

**UNITED STATES DEPARTMENT OF COMMERCE**
Patent and Trademark Office
Trademark Trial and Appeal Board
2900 Crystal Drive
Arlington, Virginia 22202-3513

HRW

MAILED

DEC 1 0 1997

PAT. & TM OFFICE

Opposition No. 88,432

Trimedyne, Inc.

v.

Myriadlase, Inc.

Before Cissel, Hohein and Walters, Administrative Trademark
Judges.

By the Board:

Myriadlase, Inc. filed an intent-to-use application for
registration of the mark SIDEFIRE for a "surgical laser
delivery system consisting essentially of optical fibers,
connectors, operating tips, and parts and fittings therefor,
sold as a unit for use with medical lasers."[1]  Trimedyne,
Inc. filed its opposition to the application, alleging that
since prior to December 6, 1991 (the filing date of the
application), it has been engaged in the development,
promotion and sale of fiber optic surgical laser probes for
use in medical procedures under the mark SIDEFIRE; that
applicant's goods are virtually the same as those with which
opposer uses its mark; and that if applicant applies the

---

[1] Ser. No. 74/227,840.

mark SIDEFIRE to its goods, there would be a likelihood of confusion.

In its answer, applicant denied the salient allegations of the notice of opposition.

Opposer has filed a motion for summary judgment, stating that the only issue in this proceeding is priority of use and contending that no genuine issues remain as to the fact that opposer used its mark SIDEFIRE more than six months prior to applicant's constructive use date for the mark SIDEFIRE for the same goods. Opposer claims a use date of at least as early as May 17, 1991, compared to applicant's filing date of December 6, 1991. Thus, opposer maintains that it is entitled to judgment in its favor, as a matter of law.

Opposer has submitted the affidavit of Marvin P. Loeb, Chairman and Chief Executive Officer of opposer, in support of its claim of priority, wherein the following activities of opposer in connection with the SIDEFIRE mark prior to December 6, 1991 are described:

(1) On or about April 1, 1991, Loeb conceived of the mark SIDEFIRE for use in connection with opposer's new fiber-optic laser probes that direct the laser beam at a 90 degree angle to the side;

(2) On or about May 17, 1991, opposer shipped a laser device under the mark SIDEFIRE to the Harbor-UCLA Medical Center for use in cadaver tissue or animal testing (a copy of the invoice for the SIDEFIRE device listing a price of $10.00 is attached)[2];

---

[2] While affiant describes this transaction as a sale, it will later become apparent that opposer is not entitled to rely upon the shipment as such.

(3) On May 22, 1991, Loeb wrote to Mr. Uchida of Nihon Kohden of Tokyo, Japan "promoting" the SIDEFIRE laser needle (a copy of this letter is attached wherein Loeb states that he is enclosing a prototype of the SIDEFIRE needle and asking Uchida to let him know what the neurologists at Nihon Kohden thought of it);

(4) On or about July 29, 1991, Loeb sent a letter to Mr. Sasso of Biomet, Inc.(a manufacturer and distributor of medical products) for the purposes, inter alia, of "promoting" the SIDEFIRE devices and of forwarding copies of an updated distribution and supply agreement. (A copy of the letter has been submitted). This was followed by a second letter on September 4, 1991 in which it is mentioned that patent applications were being prepared for the SIDEFIRE needle;

(5) On August 8-9, 1991, a conference was held between employees of James Capel Incorporated, investment bankers, and employees of opposer, as part of the production of a private placement memoranda for raising additional capital, at which the SIDEFIRE products were discussed. (A copy of the agenda is provided wherein "Sidefire" products are listed);

(6) In October 1991, an offering of stock was made and a confidential private placement memorandum dated October 1991 was distributed to at least 200 potential investors in which references are made to the SIDEFIRE products. (A copy of the 33 page memorandum has been submitted with references to SIDEFIRE products on pages 2 and 5, the latter being under a heading of "Near Term R&D Projects" and in listings on pages 19 and 20 of opposer's disposable products and devices);

(7) On or about November 19, 1991, opposer filed a 510(k) application with the FDA covering the "sidefiring" laser devices, which was approved on or about January 23, 1992;

(8) On or about November 29, 1991 opposer filed a 10-K form with the Securities and Exchange Commission, which became publicly available as of November 29, 1991, in which reference is made to the SIDEFIRE lateral or "sidefiring" fiber-optic devices. ( A copy of the 10-K form has been submitted, wherein a reference is found on page 6 to the fact that opposer was "also developing proprietary lateral or side firing optical fibers (Sidefire™Fibers)").

The remainder of the evidence introduced by the Loeb affidavit is directed to use of the SIDEFIRE mark in connection with the laser delivery devices since December 6,

1991, including inclusion in a price list effective January 1, 1992 and issuance of a press release on or about February 13, 1992 with respect to FDA approval of the SIDEFIRE laser devices.

In the corroborating affidavit of George Kopchok, the Director of the Laser Research Laboratory of Research & Education Institute at Harbor-UCLA Medical Center, he states that he has been testing new surgical laser probes for Trimedyne for six years and on May 17, 1991 Trimedyne shipped a new laser probe to him for testing which was identified on the invoice as the SIDEFIRE probe.

In the corroborating declaration of Hope Sherwood, Marketing Director of opposer, she states that the purpose of the communication by Loeb to Nihon Kohden was to investigate the possibility of Nihon Kohden acting as a foreign distributor for opposer's SIDEFIRE products; that at the time Loeb's letters were written to Biomet, Inc., the two companies were considering entering into a partnership involving the distribution and supply of Biomet and Trimedyne products; and that on or about February 21, 1992 she authored a memorandum to opposer's marketing representatives indicating that the SIDEFIRE surgical laser probes had recently received FDA approval. The remainder of the declaration is directed to subsequent promotion and sales of the SIDEFIRE devices.

Thus, opposer argues that Harbor-UCLA Medical Center, Nihon Kohden, and Biomet, Inc. all represent appropriate segments of the public, the first being a consumer of the SIDEFIRE devices and the latter two being distributors of medical products. Opposer further argues that the communications with potential investors, the SEC and the FDA constitute additional evidence of the open use of the SIDEFIRE mark prior to applicant's filing date.

Applicant, in response, has filed its opposition to opposer's motion and its cross-motion for summary judgment. Applicant states that while there is no genuine issue of material fact in this opposition, it is applicant that has priority based on the filing date of its intent-to-use application.

Applicant argues that the "pre-sales activities" of opposer fail to constitute sufficient evidence to establish a right of priority, in that none of opposer's usages of the mark SIDEFIRE prior to applicant's filing date involves public use of the mark sufficient to create an association of the mark with the goods of opposer in the minds of the consuming public. Instead, contends applicant, the documents presented show private communications with business associates and/or potential distributors, a private meeting with investment bankers, a private document distributed to potential investors, and a 10-K form which,

5

although publicly available, has not been demonstrated to have been viewed by members of the consuming public. Insofar as the invoice of the prototype sent to Kopchok is concerned, applicant argues that this was not a sale, but rather a shipment for testing of the device by a business associate.[3] The true consumers of opposer's goods, according to applicant, are doctors and hospitals, and applicant has submitted the declaration of H. A. Lawhon, President of applicant, to this effect.

Applicant also contests the sufficiency of the Loeb affidavit, and has concurrently filed a motion to strike portions thereof, on the basis that certain statements have been made "upon information and belief", rather than personal knowledge, and thus are inadmissible under FRCP 56(e). In response, opposer has submitted a supplemental declaration of Loeb, wherein all statements are made on personal knowledge and additional statements are made to the effect that:

> (1) Opposer "sold" the SIDEFIRE laser to Harbor-UCLA Medical Center, a customer of opposer, on May 17, 1991, for $10.00, in the hope that additional products would be purchased in the future;

---

[3] In response to applicant's motion for discovery under FRCP 56(f), opposer offered to stipulate that the May 17, 1997 transaction was not a sale, in return for applicant's withdrawal of its motion for a continuance. While applicant did not accept this offer, the Board stated in its order granting limited discovery that opposer had acknowledged that this transaction was not a sale and thus the deposition of Kopchok was unnecessary.

6

(2) As of May 22, 1991, Nihon Kohden was a potential distributor of opposer's SIDEFIRE products, and distributors are customers of opposer;

(3) As of July 29, 1991, Biomet, Inc. was also a potential distributor; and

(4) The products sent to Harbor-UCLA Medical Center and Nihom Kohden both had labels identifying them as SIDEFIRE devices.

In view of this supplemental declaration, we agree with opposer that the objections voiced by applicant have become moot, and thus the motion to strike is denied.

Opposer has also filed a response in opposition to applicant's cross-motion and in support of its motion. Opposer points out that under Section 7(c)(1) of the Trademark Act (15 USC 1057(c)(1)) the filing of an intent-to-use application does not establish priority over a person who previously "has used the mark". Opposer notes that under this provision only "use" is required, not "use in commerce" or use sufficient to create an association in the mind of the consuming public between the mark and the goods. Thus, it is opposer's position that only a low threshold of use is required of the prior user and opposer cites as support therefor the interpretation given to Section 7(c)(1) by the District Court in Redisar Ltd. v. Virgin Enterprises Ltd., 33 USPQ2d 2020 (S.D.N.Y. 1995). In that case the District Court held that the plaintiff's filing of an intent-to-use application for the mark VIRGIN for cola did not preclude defendant, as a prior user of the mark,

although only on goods other than cola, from obtaining a preliminary injunction against plaintiff.

The purpose of summary judgment is one of judicial economy, to avoid a trial where no genuine issue of material fact remains and additional evidence from that presented in connection with the motion would not be reasonably expected to change the result. See Pure Gold Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 222 USPQ 741 (Fed. Cir. 1984). In the present case, the parties have agreed that no genuine issues of fact remain with respect to priority and that, this being the controlling issue, the case is ripe for decision.

In Shalom Children's Wear Inc. v. In-Wear A/S, 26 USPQ2d 1516 (TTAB 1993), the Board considered the means for establishing priority in order to predate the constructive use date to which the filer of an intent-to-use application is entitled under Section 7(c). The Board stated:

> The 1988 amendments to the Trademark Act introduced the concept of intent to use as the basis for an application which would create constructive use as of its filing date, contingent on registration of the mark. These changes were not intended to alter the other ways in which priority can be established. The 1987 United States Trademark Association Trademark Review Commission Report and Recommendations, 77 TMR 375 at 398 (1989), the document that set the parameters for many of the changes wrought by the Trademark Law Revision Act, made it very clear that "The filing of an intent-to-use or use-based application would not constitute nationwide constructive use against anyone who used a mark before the filing date… Questions of priority and territorial rights involving prior users should be decided under current law." [*Supra* at 1519].

Thus, the opposer in the *Shalom* case was found to be entitled to establish priority over applicant's constructive use date with use analogous to trademark use, which has long been held sufficient use to establish priority, even though it is not sufficient to provide a basis for an application to register. The Board did not contemplate the adoption of a lesser level of use for purposes of Section 7(c)(1), but rather followed the intentions expressed in the legislative history of the Trademark Law Revision Act that priority be determined under the standards already in existence.

We find no reason to change this position and thus reject any claim by opposer that a lower threshold of use might be appropriate. Opposer's pre-sales activities will be measured under the present standards for use analogous to trademark use. Furthermore, any contention by opposer that opposer's shipment of a prototype to Harbor-UCLA Medical Center qualified as a sale, as opposed to a pre-sale activity, must be rejected. Kopchok stated in his affidavit that the device was submitted to him for testing, as he had previously done for Trimedyne.[4] While the Medical Center

---

[4] Although opposer no longer argues that the shipment to Kopchok should qualify as "use" on the basis of experimental testing, we would note that this single shipment of one prototype would clearly not fall within the catagory of "ongoing shipments of a new drug [or device] to clinical investigators by a company awaiting FDA approval", as was set forth as an example of non-typical, but acceptable "use in commerce" in the legislative history of the Trademark Law Revision Act. See Senate Judiciary

9

may well have been a potential customer, this transaction prior to FDA approval for the token fee of $10 cannot be termed a sale, as opposer itself offered to stipulate.

In its recent decision in T.A.B. Systems v. PacTel Teletrac, 37 USPQ2d 1879 (Fed. Cir. 1996), our principal reviewing court fully analyzed the types and extent of activities necessary to demonstrate use of a term in the manner analogous to trademark use sufficient to establish prior proprietary rights in the designation.[5] The Court made it clear that the activities claimed to constitute analogous use must have a substantial impact on the purchasing public. The use must be open and public and must be sufficient to result in actual perception by prospective purchasers of the present or future availability of the goods or services under the mark. Moreover, the use must be directed to a "substantial portion" of the potential consumers of the goods or services. *Supra* at 1882-3.

Applying these criteria to the present case, we find that opposer has failed to demonstrate sufficient use of the term SIDEFIRE in connection with its surgical laser probes to establish use analogous to trademark use and, thus, to preclude applicant's reliance upon its constructive use date

---

Committee Report on S. 1883; Senate Report No. 100-515 (Sept. 15, 1988).

[5] While both parties have discussed standards set forth in prior cases, we need not consider the same, in view of the more recent developments in the law.

under Section 7(c). The promotion of the SIDEFIRE to two potential distributors, even if these two are viewed as potential customers, can hardly be considered use sufficient to make a substantial impact on the purchasing public. The remainder of opposer's pre-sale activities prior to December 6, 1991 were directed to potential investors in the company, not potential purchasers of the SIDEFIRE devices.

Accordingly, opposer's motion for summary judgment based on use of the mark SIDEFIRE on surgical laser probes prior to applicant's filing date of an intent-to-use application for the same mark for the same goods is denied. Applicant's cross-motion for summary judgment is granted. The opposition is dismissed with prejudice.[6]

R. F. Cissel

G. D. Hohein

C. E. Walters
Administrative Trademark Judges,
Trademark Trial and Appeal Board

---

[6] When applicant's intent-to-use application is returned to Examining Attorney after the filing of a statement of use, the apparent applicability of a refusal under Section 2(e)(1), in view of the frequent description by opposer of its device as a "sidefiring" laser needle, should be considered.

11